## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**ELLIOT JAMES WHITE**      )
          Plaintiff,       )
                      )
      v.                 )
                      )      Civil Case No. RWT 04-2072
                      )
**BALTIMORE CITY POLICE**   )
**DEPARTMENT et al.,**        )
          Defendants.    )

## MEMORANDUM OPINION

This case arises out of a public strip search allegedly conducted by Officers Stanley Noland, Melvin Santiago, Chris Kazmarek, and Thomas Ryan of the Baltimore City Police Department. Plaintiff alleges this search violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution. He brings suit for those alleged constitutional violations under 42 U.S.C. § 1983. Plaintiff also alleges violations of his rights under Articles 24 and 26 of the Maryland Declaration of Rights. Plaintiff further claims the brutal manner in which the search was allegedly carried out renders Defendants liable for intentional infliction of emotional distress. Defendants Noland, Santiago, Kazmarek and Ryan have filed a Motion for Summary Judgment. Because there remain genuine issues of material fact concerning the search, Defendants' Motion for Summary Judgment on the federal and state constitutional grounds will be denied by a separate order. However, because Plaintiff has failed to advance sufficient evidence of severe emotional distress, Defendants Motion for Summary Judgment on Plaintiff's claim for intentional infliction of emotional distress will be granted.

## I.  PROCEDURAL HISTORY

Plaintiff filed his original complaint on July 6, 2004.  Plaintiff filed an amended complaint[1] on August 25, 2006 to include the Baltimore City Police Department ("BCPD") as a defendant.  Defendant BCPD filed a Motion to Bifurcate in accordance with Rule 42 (b) of the Federal Rules Civil Procedure.  The Court granted Defendants' Motion to Bifurcate on January 4, 2007.  The case is now proceeding against four police officers: (1) Stanley Noland, (2) Melvin Santiago, (3) Chris Kazmarek, and (4) Thomas Ryan.

## II. FACTUAL BACKGROUND

Plaintiff alleges Defendants searched him three times on May 26, 2004.  The facts regarding the second and third search are disputed.  Officers Ryan and Santiago allege the first search was initiated after they observed Plaintiff on a bicycle with a bulge in the waist of his sweat pants.  The two officers approached Plaintiff and asked what he had in his waist band. Plaintiff responded by lifting his shirt and showing them a sub sandwich in the waist of his pants. Plaintiff then rode away on his bicycle.  Officers Ryan and Santiago allege they later observed a hand-to-hand transaction between Plaintiff and a female near the site of the first search.  The officers then followed Plaintiff to a gas station.

The facts surrounding the second search are disputed.  The parties agree the second search took place later that day outside a gas station.  Officer Ryan alleges the officers overheard a woman telling Plaintiff she did not want to purchase any heroin.  Officer Ryan alleges he then approached Plaintiff and asked if Plaintiff was carrying any weapons or contraband.  Ryan claims Plaintiff responded by volunteering to allow Officer Ryan to search him.  Officer Ryan then conducted a "pat down" and pulled Plaintiff's waist band out to look into Plaintiff's crotch

---

[1] Plaintiff's counsel mistakenly labeled the amended complaint as the "second amended complaint".

area.  According to Officer Ryan, he then asked Plaintiff to lift his genitalia.  Officer Ryan then allegedly stretched out the elastic band in the back of Plaintiff's sweat pants and saw something between Plaintiff's buttocks.

Plaintiff's account of the second search contradicts Defendants' version of events. Plaintiff alleges the officers pulled into the gas station, "jumped out of their cars, and demanded that Plaintiff 'assume the position." (Second Amend. Compl. ¶ 12.)  An officer then allegedly ordered Plaintiff to "unbutton his pants and lift his privies."  *Id.*  Plaintiff refused to do so and was handcuffed.

The third search was conducted alongside the gas station.  Plaintiff was placed face first on the ground.  Defendants Santiago and Ryan claim they lifted Plaintiff's sweat pants to remove evidence from Plaintiff's buttocks.  Officer Santiago states he put on a pair of gloves and manipulated Plaintiff's buttocks to remove a plastic bag of drugs from between Plaintiff's buttocks while another officer held open Plaintiff's pants.  Plaintiff alleges Noland placed his knee in Plaintiff's back and held him down.  Plaintiff alleges he felt his pants come down and heard one of the officer's say "get a stick."  Plaintiff claims he was then sodomized with a stick while one of the officers removed the evidence from his rectum.

## III. STANDARD OF REVIEW

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  A dispute of material fact is only "genuine" if sufficient evidence favoring the

non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248-49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-24). When ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (emphasis added).

Defendants cite persuasive authority for the proposition that aspects of Plaintiff's allegations should be ignored as "incredible." (Defs.' Mot. Summ. J. 7.) In an unpublished table opinion, the Fourth Circuit noted that "[u]nder certain circumstances . . . a court may put aside testimony that is so undermined as to be incredible." *Gray v. Spillman*, No. 91-7199, 1993 WL 165039, at *2 (4th Cir. May 17, 1993) (unpublished table opinion) (citing *Johnson v. Washington Metro. Area Transit Auth.*, 883 F.2d 125, 128 (D.C. Cir. 1989)). The *Gray* court explained that summary judgment may be granted when "a plaintiff's claim is supported solely by the plaintiff's self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility, or other persuasive evidence that the plaintiff has deliberately committed perjury." *Id.* However, the *Gray* court stressed that mere inconsistencies in the plaintiff's testimony are insufficient to allow the Court to discount the plaintiff's testimony at the summary judgment stage. *Id.* (stating "a trial court errs if, by noting basic discrepancies in the testimony, the court concludes it to be inherently incredible").

In this case, Defendants argue Plaintiff's allegation of forced sodomy should be discounted because it is "self-serving and incredible." (Defs.' Mot. Summ. J. 7.) Defendants cite the report of a gastroenterologist to support this proposition. In this report, the gastroenterologist asserts that it would be difficult to find a stick that would be small enough to insert into a patient's anus but large enough that the stick would not "tend to break off." (Ex. 3 at 3.) The gastroenterologist also states he is "skeptical" that police officers would be willing to touch "fecal-contaminated evidence" that had been removed from a suspect's rectum. *Id.* The gastroenterologist made these speculations without ever examining Plaintiff or the evidence.

Although the report sheds doubt on Plaintiff's allegation of sodomy, it falls far short of demonstrating Plaintiff's allegations are "physicall[y] impossibl[e]." *Gray,* 1993 WL 165039, at *2. Only the jury may weigh the doctor's credibility against the Plaintiff's. *Anderson*, 477 U.S. at 255 (stressing that "credibility determinations . . . are jury functions, not those of a judge"). Moreover, even assuming the Court discounts Plaintiff's allegation of forced sodomy, the Court must still accept as true Plaintiff's allegation that he was strip searched in public by Defendants. *See id.*

## IV. ANALYSIS

Defendants' Motion for Summary Judgment on Plaintiff's § 1983 and Maryland Declaration of Rights claims is denied because there remain genuine issues of material fact that may only be decided by the jury. The Court also rejects Defendants' assertion of qualified immunity because, if all of Plaintiff's allegations are accepted as true, Defendants violated a clearly established federal right. However, the Court grants Defendants' Motion for Summary Judgment on Plaintiff's claim of intentional infliction of emotional distress because Plaintiff has failed to present adequate evidence of severe emotional distress.

**A.  Fourth Amendment Violations**

The first issue is whether Defendants' alleged strip search[1] of Plaintiff constituted an

unreasonable search under the Fourth and Fourteenth Amendments of the United States

Constitution and Articles 24 and 26 of the Maryland Declaration of Rights.[2]  In *Bell v. Wolfish*,

the Supreme Court established an analytical framework for evaluating the reasonableness of strip

searches. 441 U.S. 520 (1979).  Under *Bell*, the Court is required to balance "the scope of the

particular intrusion, the manner in which it is conducted, the justification for initiating it, and the

place in which it is conducted."  *Id*. at 599; *see also Amaechi v. West*, 237 F.3d 356, 361 (4th

Cir. 2001) (holding a strip search to be unreasonable because it entailed excessive intrusion, was

performed in a public place, and was not likely to be necessary to recover a weapon or prevent

destruction of evidence).  When a strip search is at issue, courts have placed great emphasis on

whether the search was performed in public or in private.  *Illinois v. Lafayette*, 462 U.S. 640, 645

(1983) (stating that while a strip search incident to arrest may be justified if done in privacy, "the

interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the

street); *Polk v. Montgomery Co.*, 782 F.2d 1196, 1201-02 (4th Cir. 1986) (noting that whether

the strip search is conducted in public or private "is especially relevant in determining whether a

---

[1] Under Fourth Circuit precedent, "[a] strip search includes the exposure of a person's naked body for the purpose of a visual or physical examination."  *Amaechi*, 237 F.3d at 363; *see also United States v. Dorlouis*, 107 F.3d 248, 256 (4th Cir. 1997) (evaluating conduct as a strip search when suspect's trousers were pulled down while suspect's boxer shorts were left in place). Because Plaintiff alleges Defendants pulled Plaintiff's trousers down below his knees during their search, their alleged conduct will be evaluated by the Court as a strip search.

[2] Neither party's brief addresses the alleged violations of the Maryland Declaration of Rights. However, under Maryland law, "Articles 24 and 26 of the Maryland Declaration of Rights . . . have consistently been held to be 'in pari materia' or 'equated with' the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution."  *Widgeon v. Eastern Shore Hosp. Center*, 479 A.2d 921, 927 (Md. 1984); *see also Williams v. Prince George's County*, 685 A.2d 884, 895 (Md.App. 1996) ( "the essential analysis . . . is the same under Articles 24 and 26 of the Maryland Constitution as that under the Fourth Amendment to the United States Constitution").

strip search is reasonable under the circumstances"); *Logan v. Shealy*, 660 F.2d 1007, 1014 (4th

Cir. 1981) (noting that "no police officer in this day and time could reasonably believe that

conducting a strip search in an area exposed to the general view of persons . . . whether or not

any one actually viewed the search, is constitutionally valid"); *Jones v. Murphy*, 470 F.Supp. 2d

537, 548 (D.Md. 2007) ("being strip searched in a non-private setting also violates what appears

to be a clearly established right in the Fourth Circuit").

    In this case, Plaintiff alleges he was forced to the ground by Defendants.  Plaintiff alleges

Defendants then pulled Plaintiff's pants down below his knees and sodomized him with a stick in

order to obtain a packet of drugs.  Plaintiff further alleges that throughout this search Defendants

bombarded Plaintiff with slurs and threats.  Like the search in *Amaechi*, this search was allegedly

performed in public (*see* 237 F.3d at 361), and involved "disrobing an arrestee on the street."

*Lafayette*, 462 U.S. at 645.  The alleged use of the stick was unnecessarily degrading and

humiliating.  *See*, *e.g.*, *Amaechi*, 237 F.3d at 363 (noting that "intrusion into the arrestee's body

cavity is the ultimate invasion of personal dignity"); *Bond v. United States*, 529 U.S. 334, 337

(2000) ("[p]hysically invasive inspection is simply more intrusive than purely visual

inspection").  Even if the Court discounts Plaintiff's allegations of forced sodomy, the public

disrobing and search of a prisoner violates contemporary notions of decency.

    Furthermore, like the search in *Amaechi*, Defendants "could not rely on any type of

security justification for this search." *Amaechi*, 237 F.3d at 361.  By the time Defendants

allegedly pulled off Plaintiff's sweat pants, Defendants had already patted Plaintiff down for

weapons and inspected the inside of Plaintiff's clothing.  Therefore, any weapons Plaintiff had

concealed on his person would have been revealed by the time he was allegedly stripped.  Unlike

*Amaechi*, this case involves concealed contraband.  Defendants assert the strip search was

therefore justified by the"real danger that the evidence would be destroyed or concealed."
(Defs.' Mot. Summ. J. 17.)  However, Defendants do not elaborate on how Plaintiff could have
further concealed or destroyed evidence lodged in his rectum while he was handcuffed in the
back of a police cruiser.  Moreover, this alleged urgency is contradicted by the policies reflected
in Police General Order 4-94.  Police General Order 4-94 flatly prohibits public strip searches
and mandates that prisoners be taken to a private location before a strip search may be
conducted.

Defendants place a great deal of emphasis on the fact that their alleged strip search of
Plaintiff was incident to an arrest.  Defendants correctly assert that a search incident to arrest is
an exception to the general warrant requirement of the Fourth Amendment.  *See*, *e.g.*, *United
States v. Currence*, 446 F.3d 554, 556 (4th Cir. 2006).  However, even searches incident to arrest
must be reasonable.  *Amaechi*, 237 F.3d at 361 (expressly rejecting the argument that "all
searches incident to arrest, no matter how invasive, are inherently reasonable").  Because the
alleged strip search was conducted in public, used degrading means, and lacked compelling
justification, the Court finds that Plaintiff has presented sufficient evidence to raise a genuine
issue of material fact regarding the reasonableness of the search.

**B. Affirmative Defense of Qualified Immunity**

The second issue is whether Defendants are entitled to use the shield of qualified
immunity.  The Fourth Circuit has developed a three-prong analysis for evaluating claims of
qualified immunity.  This test includes: "(1) identification of the specific right allegedly violated;
(2) determining whether at the time of the alleged violation the right was clearly established; and
(3) if so, then determining whether a reasonable person in the [official's] position would have
known that doing what he did would violate that right."  *Pritchett v. Alford*, 973 F.2d 307, 312

(4th Cir.1992); *see also Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  The third prong of this test is an objective determination.  The Court must ask whether it "would be clear to an objectively reasonable officer that his conduct violated that right."  *Brown v.* Gilmore, 278 F.3d 362, 367 (4th Cir. 2002).The Court must first address whether "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show [that] the officer's conduct violated a constitutional right."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  For the reasons stated above, the Court finds that the public strip search of a prisoner without compelling justifications is an unreasonable search under the Fourth and Fourteenth Amendments.

The Court must next determine whether the right violated is clearly established.  This prong of the analysis requires the Court to define the constitutional right "at a high level of particularity."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999).[3]  "Clearly established" does not mean "the very action in question has previously been held unlawful," but it does require that, "in the light of pre-existing law the unlawfulness [of the conduct] must be apparent."  *Wilson*, 526 U.S.at 615; *see also Amaechi*, 237 F.3d at 362 ("the exact conduct at issue need not have been held unlawful for the law governing an officer's actions to be clearly established.")

Defendants claim the United States Supreme Court "has not specifically addressed the validity of strip searches incident to arrest."  (Defs.' Mot. Summ. J.16) (citing *Lafayette*, 462 U.S. at 640.  However, the Fourth Circuit has interpreted Supreme Court precedent to be more clear on this issue.  *See Amaechi*, 237 F.3d at 365 (citing *Lafayette* to stand for the proposition

---

[3] For example, in *Hope v. Pelzer*, the Court avoided the broad question of whether cruel and unusual punishment was forbidden.  536 U.S. 730, 737.  Instead, the Court addressed the highly particularized issue of whether the specific act of suspending a prisoner from a hitching post was clearly forbidden under the law.  *Id.*

that "[t]he Supreme Court has ***expressly disavowed*** the right of an officer to disrobe an arrestee

on the street pursuant to a search incident to an arrest without the presence of justifying factors")

(emphasis added).  The Fourth Circuit has also consistently applied the *Bell* framework to

evaluate the reasonableness of strip searches and has emphasized the "necessity of conducting a

strip search in private." *Id.*; *see also Dorlouis*, 107 F.3d at 256 (noting that a search was more

likely to be reasonable because it "did not occur on the street subject to public viewing"); *Polk*,

782 F.2d at 1201-02 (stating that whether a strip search is conducted in public or private is

"especially relevant in determining whether a strip search is reasonable"); *Logan*, 660 F.2d at

1014 (stating that one of the most important elements of the *Bell* "balancing inquiry into the

reasonableness of a strip search is the place in which it is conducted").  The Fourth Circuit has

expressly stated that public strip searches are constitutionally suspect. *Id.* (noting that "no police

officer in this day and time could reasonably believe that conducting a strip search in [public] . . .

is constitutionally valid") (internal quotes omitted).  Finally, Police General Order 4-94 also

expressly prohibits public strip searches. *See Exhibit 5.*  Because Fourth Circuit law, the Police

General Order, and common notions of decency all militate against the actions allegedly taken

by Defendants, the Court concludes the alleged public strip search of Plaintiff violated clearly

established law. Furthermore, because unjustified public strip searches are so repugnant to our

constitutional ideals and so clearly forbidden by the Police General Order, the Court concludes

that a reasonable official would have known that stripping a prisoner in public violates a federal

right.  Therefore, Defendants' claims of qualified immunity are without merit.

## C.  Intentional Infliction of Emotional Distress Claim

The third issue is whether Plaintiff has presented sufficient evidence of intentional

infliction of emotional distress to raise a genuine issue of material fact.  Under Maryland law, a

plaintiff alleging intentional infliction of emotional distress must show (1) intentional conduct; (2) the conduct was extreme or outrageous; (3) the plaintiff suffered ***severe emotional distress***; and (4) a causal connection between the defendant's outrageous conduct and the plaintiff's emotional distress. *Hamilton v. Ford Motor Credit Co.,* 502 A.2d 1057, 1063 (Md.App. 1986) (citing *Harris v. Jones*, 380 A.2d 611 (Md. 1977). Merely alleging anger or humiliation will not satisfy the requirement of severe emotional distress. *Thacker v. City of Hyattsville,* 762 A.2d 172, 197 (Md.App. 2000) (holding a plaintiff failed to show severe emotional distress when the plaintiff alleged a wrongful arrest caused him fear, humiliation, anger, and distrust of police). Rather, Plaintiff must show evidence of "a severely disabling emotional response to the defendant's conduct," and that the distress was so severe that "no reasonable man could be expected to endure it." *Id.* (citing *Harris*, 380 A.2d at 611); *see also Caldor v. Bowden*, 625 A.2d 959 (Md. 1993) (rejecting claim of severe emotional distress when plaintiff merely showed evidence he was "upset" and "embarrassed"); *cf Figueiredo-Torres v. Nickel*, 584 A.2d 69, 76 (Md. 1991) (stating a plaintiff had properly alleged the elements of severe emotional distress when plaintiff alleged defendants conduct caused him to develop both "adjustment disorder" and "systemic hypertension and loss of visual acuity in his left eye, requir[ing] hospitalization for severe emotional distress, shock and fright to his nervous system").

In this case, Plaintiff's psychiatrist reports Plaintiff suffers from a condition called "adjustment disorder." (Pl.'s Opp'n 36.) Like the plaintiff in *Caldor*, Plaintiff's major symptoms are "intense anger, [and] humiliation." *Id.* Unlike the plaintiff in *Figueiredo*, Plaintiff has not sought psychological counseling or treatment for his alleged distress and exhibits no physical symptoms. (Ex. 1 at 22-23.) Because Plaintiff has failed to provide even a scintilla of evidence of emotional distress that goes beyond anger and humiliation, the Court

grants Defendants' motion for summary judgment on Plaintiff's claim of intentional infliction of emotional distress.

## V.      CONCLUSION

Plaintiff has raised genuine issues of material fact regarding Defendants' alleged federal and state constitutional violations.  Therefore, Defendants' motion for summary judgment on those issues is denied.  However, because Plaintiff has failed to produce even a scintilla of evidence of severe emotional distress, the Court grants Defendants' motion for summary judgment on Plaintiff's claim of intentional infliction of emotional distress.


<u>September 28, 2007</u>                                 _____/s/_____
**DATE**                                                        **ROGER W. TITUS**
                                                                      **UNITED STATES DISTRICT JUDGE**